**JONES LAND AND LIVESTOCK CO.,** a Wyoming corporation; and Hugh W. Jones, individually, Appellants (Defendants),

Wyoming Production Credit Association, a Wyoming corporation; and American Quasar Petroleum Company of New Mexico, a Texas corporation, (Defendants),

v.

**FEDERAL LAND BANK OF OMAHA,** a corporation, Appellee (Plaintiff).

No. 86–197.

Supreme Court of Wyoming.

Feb. 26, 1987.

Philip Nicholas of Corthell and King, Laramie, for appellants.

Richard D. Gist of Richard D. Gist, P.C., Lander, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This is an appeal from a summary judgment for foreclosure of lands mortgaged by appellants Jones Land and Livestock Co., a Wyoming corporation, and Hugh W. Jones, individually, to secure the payment of promissory notes held by Federal Land Bank of Omaha (FLB) and Wyoming Production Credit Association (WPCA).

We affirm.

Appellants present the following issues for review:

"1. Are there material facts in controversy regarding the issues raised in the complaint, crossclaim or the affirmative defenses such that granting summary judgment was inappropriate?

"2. Is there a material issue of fact concerning any of the following:

"a. Did appellees agree to give appellants releases for pieces and parts of the appellants' Baldwin Place in order that they could make land sales which would generate income to make payments to appellees?

"b. Were appellants' circumstances such that the regulations promulgated pursuant to the Farm Credit Act and incorporated in the mortgage given by appellants to appellees required appellees to provide or at least consider providing partial releases?

"c. Did appellees breach the terms of the contract with appellants by not providing promised partial releases?

"d. Did appellees pursue a course of dealing with appellants which prevented appellants from repaying the notes payable to appellees?

"e. Are there facts which would justify treating appellees, the Wyoming Production Credit Association and the Federal Land Bank of Omaha, as the same entity for purposes of this action such that defenses against one are valid against the other?

"f. Did appellees act in concert or conspire in their acts against appellants such that defenses against one are valid against the other?

"3. Did appellees interfere with appellants' ability to perform, causing the default upon which appellees rely to bring this action to foreclose?

"4. Was there sufficient competent evidence on the issues of attorneys' fees and interest rates before the Trial Court to support the Court's Judgment?"

On April 4, 1975, appellants borrowed $506,000 from FLB to refinance and expand their existing ranching operations and to pay for Mr. Jones' ranch house. The loan was evidenced by appellants' promissory note made payable to FLB and was secured by a mortgage on appellants' lands—a ranch known as the Beaver Creek ranch and a ranch located near Lander, Wyoming, known as the Baldwin place. The loan documents provided that the loan was to be repaid in 29 equal annual installments but gave FLB the option to require prepayment in full on January 1, 1980, if FLB was not satisfied with appellants' financial progress.

During the time appellants were negotiating the FLB loan, they borrowed an additional amount of money from WPCA for the purchase of more cattle and machinery, which loan was evidenced by appellants' promissory notes made payable to WPCA and was secured by another mortgage on appellants' ranch lands. This mortgage is the subject of WPCA's cross-claim against appellants. None of the loan documents mention the sale of the mortgaged land by appellants for the purpose of making their annual payments or otherwise; however, paragraph ten of the FLB mortgage provides:

"That *the Mortgagee may* extend and defer the maturity of and renew and reamortize said indebtedness, release from liability any party liable thereon, and *release from the lien* hereof *portions of the property covered hereby*, without affecting the priority hereof or the liability of Mortgagors or any other party for the payment of said indebtedness, all such extensions, deferments, renewals, and reamortizations to be secured hereby." (Emphasis added.)

In 1979 appellants negotiated the sale of approximately 35 acres of their ranch lands and submitted a letter application to FLB for release of the acreage from the FLB mortgage. The letter also contained a proposal for making the FLB loan current and plans to sell additional parcels of the ranch lands in the future. FLB accepted appellants' request and reamortized appellants' loan, providing for a maturity date of January 1, 1983.

None of the planned sales materialized, and appellants advised FLB that, due to high interest rates, it might be difficult to sell development property. During the month of June 1981, appellants verbally informed FLB that they wanted to borrow enough money from the Yellowstone State Bank, Lander, Wyoming, to make the FLB and WPCA loans current and to finance anticipated subdivision development costs. They also informed FLB that they needed a release of 40 to 80 acres of their mortgaged lands so that Yellowstone State Bank would have a first mortgage to secure the loan. FLB refused to grant the requested release.

On July 20, 1982, FLB advised appellants that, because of the delinquent status of the loan, it would consider legal action if the loan was not paid at maturity on January 1, 1983, or if other suitable arrangements were not made. Appellants failed to pay the FLB loan at maturity. FLB commenced foreclosure proceedings on February 10, 1984, and added WPCA as one of the defendants by filing an amended complaint on March 2, 1984. WPCA answered the complaint, admitting that its mortgage

was junior, and cross-claimed against appellants for foreclosure of its mortgage since the WPCA loan was not timely paid.

Appellants answered FLB's complaint and WPCA's cross-claim by admitting the existence of the notes and mortgages and alleging that the notes were not in default, that the notes and mortgages did not constitute the entire agreement, and that FLB and WPCA were barred from recovery by the statute of limitations and by the doctrines of waiver, laches, and estoppel. After FLB and WPCA filed their motions for summary judgment, appellants filed for Chapter 11 bankruptcy. The automatic stay entered in the bankruptcy proceeding was lifted, and the motions were heard after two continuances.

In support of their motions for summary judgment, FLB and WPCA submitted affidavits alleging the delivery of · the notes and mortgages to them, appellants' subsequent defaults, and the amounts of principal, interest, attorney's fees, and costs owing by appellants.

The affidavit and deposition of Mr. Jones filed in opposition to the motions for summary judgment stated, inter alia, that Mr. Jones became a real estate agent for the purpose of buying and selling the land so he could earn enough money to purchase a ranch; that he bought the Baldwin place to subdivide and sell in small parcels; and that he planned to use the income from those sales to pay for the Baldwin place and to aid in paying for the Beaver Creek ranch. Mr. Jones further stated that the lending agents for FLB and WPCA agreed his plan was feasible, loaned appellants the money to refinance the purchase of the Baldwin place and the Beaver Creek ranch, and further agreed that if the land sales were going smoothly, the FLB loan would not be called due in five years.

In addition, Mr. Jones stated that WPCA forced the sale of appellants' cattle and that FLB did nothing to stop the sale, knowing that it would prevent appellants from raising money to make the mortgage payments. The affidavit also contained Mr. Jones' allegations that FLB, through its agents, broke express oral agreements to provide appellants with partial mortgage releases for subdivided lands, and, as a direct consequence, appellants were unable to make the FLB mortgage payments.

The trial court ruled that there were no genuine issues of material fact raised by appellants and that FLB and WPCA were entitled to judgment as a matter of law. Summary judgment was entered on June 13, 1986.

■ Appellants support their contention that there is a genuine issue of fact by arguing that the proposed testimony of Mr. Jones concerning FLB's agreement to provide releases is consistent with the language of the mortgage in that the mortgage does not prohibit releases. Apparently, it is appellants' position that FLB was required to provide them with partial releases because there was an oral agreement to do so. We do not agree.

When construing written contracts, we are guided by the black letter law reiterated in *Shepard v. Top Hat Land & Cattle Co.*, Wyo., 560 P.2d 730, 732 (1977):

"If the language of the contract is plain and unequivocal that language is controlling and the interpretation of the contractual provisions is for the court to make as a matter of law. The meaning of the instrument is to be deduced only from its language if the terms are plain and unambiguous."

See also *Williams v. Collins Communications, Inc.*, Wyo., 720 P.2d 880, 883 (1986).

The language of the mortgage is plain and unequivocal that FLB may, at its discretion, grant partial releases of the mortgage. We will, therefore, not consider whether extraneous evidence would alter this discretion.

■ Appellants also assert that, while there is some discretion in FLB in providing mortgage releases, all requests had to be considered as they are contemplated in the mortgage and the Federal Farm Act, which act was incorporated into the mortgage by reference. Appellants' authorities do not support this contention. In any

event, appellants have failed to demonstrate any instance in which FLB refused to consider granting a request for a mortgage release, and we are unable to find any in the record on appeal. The argument that a request for a release was not made because it would not have been granted does not create a substantial issue of fact which will avoid the entry of summary judgment. The refusal by FLB to provide a release so that appellants could get a bank loan does not mean that FLB did not consider granting the release. The record demonstrates that FLB considered the request and advised appellants that they could not borrow themselves out of trouble.

▆ Appellants' contention that an issue of fact exists as to whether the individual and concerted acts of FLB and WPCA caused them to lose their land is not sound. Appellants argue that FLB and WPCA officed together and worked out a plan which would force appellants to sell their cattle, prevent them from selling land, and force them to sell or lose both. Mr. Jones stated in his affidavit that, in addition to not providing appellants with partial releases, FLB did not lift a finger to prevent the forced and unjust sale of appellants' livestock by WPCA, knowing that, if appellants were out of the livestock business, they could not raise money to make the mortgage payments. Appellants' claim is conclusory and fails to demonstrate the existence of a genuine issue of material fact so as to defeat the motions for summary judgment. *Roth v. First Security Bank of Rock Springs, Wyoming,* Wyo., 684 P.2d 93 (1984); *Gennings v. First National Bank at Thermopolis,* Wyo., 654 P.2d 154 (1982); *Moewes v. Farmer's Insurance Group,* Wyo., 641 P.2d 740 (1982).

▆ Appellants also contend that FLB and WPCA are not entitled to foreclose their mortgages because they failed to provide partial releases and forced appellants to sell their livestock in a commercially unreasonable manner, thereby causing appellants' inability to make the mortgage payments. Appellants' contention and cited authority are premised on the existence of a mandatory obligation to grant partial releases and the assertion that Mr. Jones set out competent underlying facts in his deposition or traversing affidavit to show that FLB and WPCA unjustly caused the sale of appellants' cattle. There is not a scintilla of evidence in the record to suggest that WPCA was required or refused to grant partial releases to appellants. In addition, as we previously stated, FLB was not obligated to consider or grant partial releases to appellants pursuant to the unambiguous terms of the mortgage. We also previously stated that appellants failed to set forth any genuine issue of material fact indicating that FLB or WPCA jointly or severally caused the failure of appellants to make their mortgage payments. We, therefore, hold that neither FLB nor WPCA is estopped from foreclosing its mortgage.

▆ Appellants correctly state that the burden is on the moving party to demonstrate that there is no genuine issue of material fact before a motion for summary judgment should be granted. *Schutkowski v. Carey,* Wyo., 725 P.2d 1057 (1986). However, once the movant has established a prima facie case, the burden then shifts to the opposing party to come forward with competent evidence of specific facts countering the facts presented by the movant. General allegations and conclusory statements are not sufficient. *Roth v. First Security Bank of Rock Springs, Wyoming,* supra.

▆ Appellants assert that issues of fact exist as to whether or not FLB agreed to provide partial releases, or at least consider providing such releases as required under the Farm Credit Act, and whether or not FLB and WPCA jointly and severally pursued a course of dealing which amounted to a conspiracy to cause appellants to default in the mortgage payments. We addressed these assertions in the context of whether or not FLB was estopped from foreclosing its mortgage, and our discussion in this connection is equally applicable to appellants' contention that the trial court erred in granting FLB's motion for summa-

ry judgment. Our examination of the record on appeal clearly shows that FLB carried the burden of proving that appellants were in default in making their agreed mortgage payments and that appellants failed to come forward with specific competent evidence to show a genuine issue of material fact to defeat the motion for summary judgment. Evidence presented in opposition to a motion for summary judgment must be admissible at trial. Conclusory statements and extrinsic evidence used to construe an unambiguous contract are not admissible. *Madison v. Marlatt,* Wyo., 619 P.2d 708 (1980); *Bancroft v. Jagusch,* Wyo., 611 P.2d 819 (1980).

■ Appellants further contend that there is insufficient competent evidence to support the trial court's judgment awarding interest on the outstanding debt. It is argued that the affidavit supporting the claim for interest is insufficient in that it does not state the basis upon which the parties agreed to pay interest, the method in which interest was determined, and the standard rates charged to others. Appellants reason that summary judgment is inappropriate where such facts are missing from the affidavit and cite *Shanor v. A-Pac, Ltd.,* Wyo., 711 P.2d 420 (1986), as authority for this proposition. That case holds that the party must submit evidence which establishes a prima facie case, not that all of the evidence must be set out in the affidavit.

We have examined the promissory notes which appellants admit signing. They provide that from time to time a variable interest rate on the outstanding indebtedness may be charged. The supporting affidavits, and the referenced accounting attached thereto, provide further that such interest was computed by a simple mathematical calculation. This is sufficient to present a prima facie case of the amount of interest due on the outstanding principal indebtedness. There was no need to show what interest rates were charged to other lenders. If the interest rate was improper

or there was an inaccurate accounting of the interest charged, appellants should have supplied the trial court with evidence thereof. As we stated above, conclusory statements and categorial assertions are not sufficient to demonstrate the existence of a genuine issue of fact to defeat a motion for summary judgment.

The trial court awarded FLB the costs it incurred in obtaining an MIA appraisal of appellants' lands for use in bankruptcy court to obtain an order modifying the automatic stay to permit FLB and WPCA to proceed with their foreclosure actions. Appellants assert that it was an abuse of the court's discretion to award these costs as well as attorney's fees for services rendered in obtaining the modification.

■ Appellants do not question that these costs and fees can be incurred and awarded pursuant to the terms of the mortgage, but they do advance the argument that there was no evidence presented to show that the appraiser's fee was reasonable. They also argue that a mortgage provision providing for payment of attorney's fees by a debtor in a bankruptcy proceeding is void, unenforceable, and contrary to public policy. No authority has been cited to support these arguments. This Court has consistently refused to consider positions which are not supported by proper citation of authority. *Trout v. Wyoming Oil and Gas Conservation Commission,* Wyo., 721 P.2d 1047 (1986); *Hance v. Straatsma,* Wyo., 721 P.2d 575 (1986). We continue to take that position in this case, even though a search of authorities might substantiate appellants' argument.

■ Appellants also contend that the supporting affidavit did not address the specific criteria for ascertaining the reasonableness of the attorney's fees awarded by the court as required by DR 2–106 of the Model Code of Professional Responsibility of the American Bar Association and Supreme Court decisions. We acknowledge

that there must be some evidentiary showing in order to make a determination of reasonable attorney's fees. *Durdahl v. Bank of Casper*, Wyo., 718 P.2d 23 (1986). However, the itemization contained in DR 2–106, supra, of factors to be considered in determining the reasonableness of attorney's fees is merely a guideline to be followed by an attorney when charging a fee. It is not mandatory that a court consider and attempt to apply each and every factor when awarding a reasonable attorney's fee.

The affidavits and attachments thereto relating to attorney's fees show an itemization of the nature of the service performed, the time expended, and the hourly fee customarily charged for such service. This information was adequate to form a basis for the court's finding that the time expended and the hourly fee charged for the itemized services rendered were reasonable. We, therefore, hold that the trial court did not abuse its discretion when it entered judgment against appellants for FLB's attorney's fees.

Appellants also advance the argument that it is not appropriate to enter judgment awarding reimbursement for incidental expenses incurred in the conduct of the foreclosure proceedings, even though such reimbursement is allowed by the terms of the mortgages, unless there is documentation showing the necessity for and the reasonableness of the expenses. Appellants again fail to support their argument with the citation of any authority. We, therefore, decline to consider their argument.

We also decline to answer the question presented by appellants as to Issue 2.e. for the reason that they failed to present any argument, cogent or otherwise, or cite any authority addressing the issue.

For all of the reasons stated above, we find that the district court did not err in granting summary judgment for FLB and WPCA on all of the issues presented by the pleadings.

Affirmed.