**UNITED STATES of America, Appellee,**

v.

**Kenneth Ward THOMAS, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**John David CURTIS, Appellant.**

**Nos. 81–5062(L), 81–5139, 81–5063 and 81–5140.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 14, 1983.

Decided April 14, 1983.

Joseph O. Rogers, Jr., Manning, S.C. (Timothy J. Rogers, Rogers, Riggs & Rogers, Manning, S.C., John J. Czura, Augusta, Ga., on brief), for appellants.

Lionel S. Lofton, Asst. U.S. Atty., Charleston, S.C. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., on brief), for appellee.

Before PHILLIPS and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

ERVIN, Circuit Judge:

Kenneth Ward Thomas and John David Curtis were convicted on substantive charges of possession and importation of marijuana, and on related conspiracy and aiding and abetting counts, in violation of

---

21 U.S.C. §§ 841(a)(1), 846, 952(a), 960, and 963, and 18 U.S.C. § 2. They originally were arrested by the Coast Guard while aboard the trawler GULF PRINCESS II off Hilton Head, South Carolina. Thomas was the master of the vessel and Curtis, along with one Kenneth Gorman, comprised the crew. When the vessel was stopped, there were indications that the trawler had not been engaged in fishing: there was neither catch nor ice to preserve a catch. A small quantity of a substance later identified positively as marijuana was found scattered on the deck, on the rails, along the gunnels, and on the bumpers. The stop and arrest were made pursuant to information obtained by the Drug Enforcement Administration that the GULF PRINCESS II was engaged in smuggling drugs from South America to South Carolina.

Pursuant to a grant of immunity, Gorman testified to a federal grand jury that prior to its seizure, the trawler had sailed to South America and picked up a load of marijuana, which it brought back to South Carolina waters where the marijuana was off-loaded. A commercial fisherman named Gordon Hastings told the grand jury that he encountered the GULF PRINCESS II off the coast of Columbia twenty days before its seizure by the Coast Guard, and that it had not appeared to him to be engaged in fishing or shrimping.

When neither Gorman nor Hastings could be found to testify at the trial of Thomas and Curtis, the district court permitted their grand jury testimony to be introduced. The jury found Thomas and Curtis guilty of all charges in the bills of indictment. On appeal, Thomas and Curtis maintain that their convictions were secured in contravention of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (1982), the confrontation clause of the sixth amendment, the federal hearsay rule, and the due process clause of the fifth amendment. We find no reversible error, and affirm.

## I.

Thomas and Curtis were arrested on August 30, 1980. The Speedy Trial Act of 1974, as amended in 1979 ("the Act"), required the government, therefore, to secure an indictment by the end of September. *See* 18 U.S.C. § 3161(b) (indictment must be filed within thirty days of arrest). The Government failed to do this and instead moved for additional time on October 1, *after* the expiry of the statutory time period. The additional time granted the government pursuant to this motion also ran out on November 12 without an indictment being returned. On November 13, the government once again sought, and secured, a grant of additional time after the period in which it was required to act had elapsed. On December 2, a federal grand jury indicted Thomas and Curtis, who promptly moved to dismiss the indictment on speedy trial grounds. This motion was granted by the district court without prejudice, and on the same day, February 4, Thomas and Curtis were reindicted.

On appeal, the government apparently challenges the propriety of the dismissal of the original indictment.[1] We need not reach this issue in light of our conclusion that the subsequent indictment was timely, notwithstanding the claim by Thomas and Curtis that the dismissal of the first indictment precluded their reindictment by another grand jury. The Act requires dismissal of untimely indictments, but leaves to the district court's discretion the decision whether to dismiss with or without prejudice. 18 U.S.C. § 3162(a)(1). We think that this statutory authority to dismiss an untimely indictment without prejudice necessarily rebuts appellants' argument that the timeliness of any subsequent indictment

---

1. The government suggests that Thomas and Curtis were required to move for dismissal prior to their indictment. The Act clearly recognizes the possibility of a motion to dismiss an indictment as well as one to dismiss a complaint. *See, e.g.,* 18 U.S.C. § 3161(d)(1) ("If any indictment or information is dismissed upon motion of the defendant . . . ."). By definition such a motion cannot be made *prior* to the return of the indictment. There is no statutory provision making a pre-indictment motion to dismiss the complaint a condition precedent to filing a motion to dismiss the indictment.

is to be measured by reference to the original arrest leading to the first, dismissed indictment. This argument leads inexorably to the conclusion that any subsequent reindictment would be untimely, and thereby renders all dismissals prejudicial in effect. Our reading of the Act is supported by the *Guidelines to the Administration of the Speedy Trial Act* prepared by the Committee on the Administration of the Criminal Law of the Judicial Conference of the United States. The Committee's view is that a new prosecution is not "subject to dismissal on the basis of any failure to comply with the time limits imposed upon the original prosecution." *Guidelines* 68 (as amended August, 1981). *See also United States v. Rabb,* 680 F.2d 294, 297 (3d Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 162, 74 L.Ed.2d 135 (1982) (subsequent timeliness of indictment not measured from date of first arrest or charge); *United States v. Borum,* 544 F.Supp. 170, 172 (D.D.C.1982) (dismissal of complaint tolls Speedy Trial Act thirty day requirement for indictments).[2] We agree.

## II.

■ The government's case against Thomas and Curtis rested largely on the testimony of the two men, Gorman and Hastings, who testified before the grand jury but not at trial, but whose grand jury testimony was read into the record before the jury. Neither Gorman nor Hastings could be located at the time of the trial. Thomas and Curtis claim that the government's attempts to locate these key witnesses were perfunctory and insincere and that the grand jury testimony should have been excluded, with the consequent collapse of the government's case. They maintain that its admission violated the rule against hearsay and denied them their sixth amendment right to confront the government's witnesses.

Both the appellants and the government agree that *United States v. West,* 574 F.2d 1131 (4th Cir.1978), governs this issue. In *West,* this court sustained the admission of the grand jury testimony of a witness who was murdered before the trial. The testimony was admitted pursuant to Federal Rule of Evidence 804(b)(5), which permits the introduction of hearsay if the declarant is unavailable as a witness and the court determines that the hearsay has "circumstantial guarantees of trustworthiness" equivalent to those present in Rule 804's specific exceptions to the prohibition on hearsay (former testimony subject to cross examination, dying declarations, statements against interest, and statements of family history). In *West,* the court found that the temporal proximity of the witness's testimony to the events he saw and the corroboration of his testimony by that of others constituted the necessary "circumstantial guarantees of trustworthiness." In a companion case, *United States v. Garner,* 574 F.2d 1141 (4th Cir.1978), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978), we upheld a conviction based in part on the grand jury testimony of an alleged co-conspirator who refused to testify as a prosecution witness at trial despite an offer of use immunity. We went on in both cases to hold that the evidence thus admissible under the evidentiary rule was also admissible under the sixth amendment.

It is clear from *West* and *Garner* that the grand jury testimony of an unavailable witness may be introduced under certain condi-

---

2. We read appellants' briefs to contain, albeit obscurely, a challenge to the propriety of the district court's decision to make its dismissal of the first indictment without prejudice. The Act requires that

> [i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(1). As the district court observed in its dismissal order, the offenses charged were serious, the period between arrest and indictment was not egregious, Thomas and Curtis were free on bond, and, at the time of the court's dismissal ruling, they were unable to suggest any real prejudice resulting to them when questioned by the court. In these circumstances, we cannot say that the district court abused its discretion in ordering dismissal without prejudice.

tions without violating the Constitution or the Federal Rules of Evidence. Thomas and Curtis maintain, however, that the government's efforts to secure the live testimony of Gorman and Hastings were so perfunctory that the latter cannot fairly be described as unavailable. Rule 804 defines "unavailability as a witness" to include situations where the witness "is absent from the hearing and the proponent of his statement has been unable to procure his attendance... by process or other reasonable means." Fed.R.Evid. 804(a)(5). The question, therefore is whether the government used "reasonable means" to procure the attendance at trial of Gorman and Hastings.

The government maintained direct contact with Hastings, and contact through his lawyer with Gorman, for a considerable part of the period between their testimony before the grand jury and the trial. Hastings assured the Assistant U.S. Attorney that he would keep in touch, while Gorman's lawyer, who had agreed to ensure his availability for the trial, testified that he had no indication Gorman would disappear. After the two men vanished, the government attempted in vain to locate them by service of process. While these attempts were unavailing, they were not unreasonable. We conclude therefore that the grand jury testimony of Hastings and Gorman was admissible under *West* and *Garner*.[3]

### III.

The additional claims of Thomas and Curtis are without merit. The judgment of the district court is

AFFIRMED.

**3.** In considering the government's motion to admit the grand jury testimony of Gorman, the court itself called Gorman's girlfriend, Vanessa Gail Ingles, to testify outside the jury's presence as to his movements and whereabouts after defense counsel objected to the prosecutor's attempt to relate to the court what Ingles would say. The record indicates that Ingles was questioned by the prosecutor rather than by the district judge and that the court then refused to permit cross examination by defense counsel.

This procedure was error. Both parties are entitled freely to cross examine and impeach a court witness. *Estrella-Ortega v. United States,* 423 F.2d 509, 511 (9th Cir.1970); 2

Wright, *Federal Practice and Procedure: Criminal 2d* § 418 (1982). The fact that Ingles was called to testify outside the jury's presence to aid the court in resolving an evidentiary point rather than before the jury on a substantive issue in the case does not affect the defendants' right to question her: the value of adversary cross-examination in ascertaining the truth is as great when the truth to be learned concerns the government's efforts to procure a witness as when it concerns the acts of an accused. However, this error was harmless. The district court's decision to admit the evidence was sustainable even apart from Ingles' rather unenlightening testimony.