**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Perlie Donald WORKMAN, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jeffrey WORKMAN, Defendant–Appellant.**

**Nos. 87–5129, 87–5136.**

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1988.

Decided Oct. 26, 1988.

C. Gary Triggs (C. Gary Triggs, P.A., on brief), for defendants-appellants.

Thomas E. Booth (department of Justice, Thomas J. Ashcraft, U.S. Atty., Jerry Miller, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before CHAPMAN and WILKINSON, Circuit Judges, and GORDON, Senior District Judge for the Middle District of North Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

Perlie D. Workman was convicted of possession of goods and chattels which were stolen and which had been a part of an interstate shipment in violation of 18 U.S.C. § 659. Jeffrey Workman was convicted of aiding and abetting in said possession in violation of 18 U.S.C. §§ 659 and 2. Perlie D. Workman was also convicted of intimidating and threatening a witness in violation of 18 U.S.C. § 1512(b)(1). Both appellants challenge their convictions claiming that the introduction into evidence of the previously recorded statement of Terry Davis violated their Sixth Amendment right to confrontation of this witness, and also violated the Federal Rules of Evidence. Without the Davis statement, which had been voluntarily given to FBI Agent John Turner and recorded by Davis' attorney Joe Byrd, the evidence supporting the possession count and the aiding and abetting count would not be sufficient to convict. However, the exclusion of this evidence would not alter the sufficiency of the evidence on the intimidating and threatening a witness count.

After a complete review of the evidence and the law, we agree with the trial judge that the out-of-court statement of Terry Davis was admissible, because it fell within a firmly rooted hearsay exception, and we affirm.

I

In July 1986, Ronald Wilson, a professional truck driver, received a shipment of 1,068 cases of liquor for delivery to a company in Texas. At the time, Wilson was in debt, and he decided to steal the shipment and sell it for cash. Wilson, who was in Kentucky, called his cousin Terry Davis in North Carolina and told him about the load and asked Davis to find a buyer for the liquor. Telephone records introduced into evidence showed that between 8:00 p.m. on July 25, 1986, the date of Wilson's first call to Davis, and 6:30 p.m. on July 26, 1986, six telephone calls were placed from the Davis residence to the appellants' residence.

Wilson drove to Knoxville, Tennessee, and again called Davis, who advised him to bring the load to a Rama Inn in Icard, North Carolina. After checking into the motel, Wilson accompanied Davis to the appellants' home, and Davis advised Jeffrey Workman that they had a shipment of liquor for sale. Jeffrey stated that he would contact them after Perlie Workman returned home. Davis and Wilson drove to a convenience store and unsuccessfully attempted to sell the load. Davis returned to the Workman residence and offered to sell the load to Perlie Workman, who responded that he did not want the liquor but he would contact someone who might be interested. Telephone records introduced into evidence showed that on July 26 and 27 three telephone calls were placed from the Workman residence to numbers listed to James Norman in South Carolina. Two months later, 422 cases of the stolen liquor were found on Norman's South Carolina farm.

Later on July 26, Jeffrey Workman advised Davis that Jeffrey and Perlie Workman would buy the liquor for $7,000 and instructed Davis to deliver the liquor, but not to bring Wilson at the time of delivery. Davis then drove to the Rama Inn and advised Wilson of the offer, and Wilson directed Davis to telephone Perlie Workman and confirm the price. This was done, and that evening Davis drove the truckload of liquor to Workman's home and was paid $7,000 by Perlie Workman. Jeffrey and Perlie Workman, together with Davis and two others, unloaded the liquor from the truck and placed it in a nearby building. Davis then met Wilson at the convenience store and delivered the $7,000 to him. Wilson paid Davis $500 for arranging the sale.

In January 1987, a grand jury returned a three count indictment against Perlie Workman, Terry Davis and Ronald Wilson for the theft and sale of the interstate shipment of liquor. In April 1987, Perlie Workman gave $3,000 in cash to Terry Davis' father and requested that he give the money to Terry. He gave no explanation for his delivery of the money, and France Davis, Terry's father, assumed that the money was to pay for a trailer that Terry had been trying to sell to Perlie Workman. When France delivered the money to his son, he was informed that the trailer had already been sold. France Davis held the money until several days later when Perlie Workman came to the Davis residence and stated to France that he wanted to talk to Terry even though he knew that he should not be talking to him. At that time, France Davis returned the $3,000 to Perlie Workman.

After his indictment in January 1987, Terry Davis retained Attorney Joe Byrd to represent him on the criminal indictment that had been returned by the grand jury. In April 1987, Davis agreed to plead guilty to one count of the indictment and cooperate with the government in the trial against the other defendants.

On May 12, 1987, Terry Davis, his attorney Joe Byrd and FBI Agent Turner met, and Davis gave a statement in which he confessed his role in the sale of the stolen liquor. He explained that Wilson had called and advised him that he wanted to sell the load of stolen liquor, and Davis explained the actions taken by Perlie Workman, Jeffrey Workman, Ronald Wilson, and himself in the sale and delivery of the stolen goods. Agent Turner had previously interviewed Ronald Wilson, who had confessed to stealing the load and calling Davis to assist him in selling it.

Attorney Byrd had a tape recorder at the meeting with Agent Turner, and the ques-

tions of the agent and the answers of Davis were duly recorded on tape. This tape was kept by the attorney until shortly before the trial of the appellants, and it was then turned over to Agent Turner. This taped statement was introduced into evidence at the trial. The tape was identified by both Attorney Byrd and Agent Turner, who both testified to the circumstances surrounding the taking and recording of the statement.

On June 10, Perlie Workman asked Davis to meet him at the convenience store. Davis contacted Agent Turner, and Turner fitted him with equipment that would record his conversation with Perlie Workman and would also transmit the conversation to Agent Turner's automobile, which would be parked nearby. At this meeting in Workman's automobile, Davis advised Perlie that Jeffrey Workman would probably be indicted, and that he (Davis) would have to tell the truth. Davis stated that he was scared and the following conversation ensued:

Perlie: "scared, hell, scared of what? You're in fact ... you know what you are going to get? I'm gonna show you what you gonna get."

Davis: (shouts) "no you don't Perl."

Davis: (as he exited from Perlie's car): "Oh Lord! (pause) I've got to leave here."

Perlie: "Terry, you better get here."

As Davis got out of Perlie Workman's car and fled the scene, FBI Agent Turner, who had been watching and listening to the meeting, arrested Perlie Workman, who was thereafter indicted for attempting to bribe Davis and for threatening Davis.

Two weeks prior to the trial, Terry Davis died of hepatitis, and shortly thereafter the United States Attorney filed notice, pursu-

ant to Federal Rules of Evidence 803(24), 804(b)(5), 803(5) and 804(b)(3), of his intention to use the recorded statements of Terry Davis as evidence at the trial. The statements were admitted into evidence, and Perlie Workman was convicted of possession of goods and chattels which had been stolen from an interstate shipment. Jeffrey Workman was convicted of aiding and abetting in this offense. Perlie Workman was acquitted on the bribery count, and he was convicted of intimidating and threatening a witness, Terry Davis.

## II

■ Appellants claim that the admission of the tape of Terry Davis' statement to Agent Joe Turner violated their Sixth Amendment right to be confronted by the witnesses against them, and that they were denied the right of cross-examination, and that the use of such statement violated *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The government claims that the Davis statement was admissible under a firmly established hearsay exception, Federal Rule of Evidence 804(b)(5)[1], and therefore it did not violate either the Sixth Amendment or *Bruton* principle.

*Bruton* prevents the introduction of a co-defendant's confession, which incriminates the defendant, at a joint trial when the co-defendant does not take the witness stand so that he may be cross-examined. This was a logical step following *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923 (1965), which held that the Sixth Amendment right of a criminal defendant to be confronted by the witnesses against

---

1. Federal Rule of Evidence 804(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can pro-

cure through reasonable efforts; and (C) the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and the address of the declarant.

him included the right to cross-examine the witnesses.

We are not faced with a *Bruton* issue. This case presents a hearsay question. Davis died before trial, and at the time of trial he was not a co-defendant of Perlie and Jeffrey Workman. The Court made clear in *Bruton* that a Sixth Amendment problem was created by the fact that, while the hearsay statement was inadmissible as to Bruton, it was admissible against his co-defendant, the declarant, who confessed his involvement and Bruton's involvement in the crime. The *Bruton* Court noted:

> There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause.

391 U.S. at 128, n. 3, 88 S.Ct. at 1624, n. 3.

When *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), was decided, the Court conditioned the use of out-of-court statements upon a showing of the unavailability of the declarant and the adequate "indicia of reliability" of the statement, and concluded:

> Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.

*Id.* at 66, 100 S.Ct. at 2539.

Recently, in *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the Court held that since the hearsay rules and the Confrontation Clause are designed to protect similar values, there is no need for an independent inquiry into reliability, if the evidence falls into a firmly rooted hearsay exception. However, this involved Evidence Rule 801(d)(2)(E), which covers the statement made by a co-conspirator of a party during the course and in furtherance of the conspiracy. We are faced with Evidence Rule 804(b)(5) which requires that there be "equivalent circumstantial guarantees of trustworthiness," but this is just another way of expressing the need for "adequate indicia of reliability" or "independent inquiry into reliability."

The finding of the trial judge on the guarantees of trustworthiness are subject to the clearly erroneous standard of review, *United States v. Smith,* 792 F.2d 441, 443–444 (4th Cir.1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987), and this finding by the trial judge is not clearly erroneous. The statement was given voluntarily by Terry Davis to FBI Agent Turner. Attorney Joe Byrd represented Davis, and he was present during the entire time of the questioning of Davis by the agent. The tape recording was made by Attorney Byrd, at his insistence, and it was kept by him until Davis became critically ill.

There is no question as to the identity of the voices on the tape. They are the voices of the deceased Terry Davis and Agent Turner. The questions and answers, as read to the jury, were redacted to remove those to which objections had been made and sustained. Both Agent Turner and Attorney Byrd testified to the circumstances surrounding the giving and recording of the statement.

The actions of Davis, after making the statement, are circumstances that tend to guarantee its trustworthiness. His agreement to meet with Perlie Workman and to wear a tape recorder to the meeting tend to guarantee trustworthiness, because it demonstrated his conviction that his statement was true, and that a recorded meeting with Perlie Workman would support, and not contradict, his statement.

In *United States v. West,* 574 F.2d 1131 (4th Cir.1978), we held that under Federal Rule of Evidence 804(b)(5) it was not necessary to determine if the circumstantial guarantees of trustworthiness are equivalent to those safeguards which arise from direct and cross-examination, and that the requirement of equivalent guarantees of trustworthiness was met "if there is equivalency of any one of the preceding 804(b) exceptions." *Id.* at 1136. The statement of Davis to FBI Agent Turner qualifies as a statement against interest under Rule 804(b)(3). This Rule provides:

(3) Statement against interest.

A statement which was at the time of its making so far contrary to the declarant's

pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

The statement by Davis subjected him to criminal liability under the first sentence of the rule. It did not exculpate an accused, so it is not subject to the second sentence of the rule.

In *West* we also held that the cooperation of a witness with the police to the extent of meeting with suspects and allowing the meeting to be observed and the conversation recorded lends a high degree of trustworthiness to the statement. We observed:

> Moreover, the jury listened to the tapes as well as the written statements, and the agents at the trial were subject to cross-examination about their testimony concerning what they did and what they observed. All of this lends a high degree of reliability and trustworthiness to Brown's testimony before the grand jury. It furnished the jury a firm basis for judging the truthfulness of what Brown said before the grand jury.
>
> It should not be surprising that the same circumstances suffice to meet the requirements of § 804(b)(5) and of the Confrontation Clause. This is true of other exceptions to the hearsay rule which do not contravene the Confrontation Clause. The dying declaration and the declaration against penal interest have indicia of reliability which warrant their admission as exceptions to the hearsay rule while at the same time warranting their admission under the Confrontation Clause.

574 F.2d at 1138.

The Davis statement also met the other mandates of Rule 804(b)(5) which require the trial court to determine that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. Fed.R.Evid. 804(b)(5).

The Davis statement was offered as evidence of a material fact. The statement was of a participant in the bringing together of Ronald Wilson, who wished to sell a truckload of stolen liquor, and the appellants, who agreed to and did buy it. Davis was the only eyewitness who could explain the entire transaction from its beginning (when he received the first telephone call from Wilson) until its end (when he picked up the $7,000 from Perlie Workman and delivered it to Wilson). The statement was offered as evidence of material facts, because it tended to prove certain essential elements of the crimes charged.

The statement was more probative on the point for which it was offered than any other evidence which the government could procure through reasonable efforts. Actually, it was the only evidence that could be procured to prove the extent of the appellants' involvement in the crime. Davis was the only person who could tell the entire story and connect all of the parties. Wilson testified, but his testimony could not cover the negotiations Davis had with the appellants, or the delivery and the unloading of the truck, or the payment of the $7,000 by Perlie Workman to Davis for delivery to Wilson. As we stated in *United States v. Welsh*, 774 F.2d 670, 672 (4th Cir.1985):

> For evidence to be admissible under 804(b)(5) it must be more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable efforts. Fed.R.Evid. 804(b)(5)(B). The probative value of evidence is its 'tendency ... to establish the proposition that it is offered

to prove.' *McCormick* on Evidence, 3rd Ed., § 185, at 541. Evidence has probative value if it tends to prove the issue in dispute. *United States v. Ball*, 547 F.Supp. 929 (E.D.Tenn.1981).

The statement of Davis was "more probative" because it was the only evidence available to prove many of the essential elements of the crimes charged.

The admission of the Davis statement was also in keeping with the general purposes of the evidence rules, and the interests of justice were best served by its admission. Without this statement the government could not have proved its case. The death of a most material witness should not abort a prosecution when a statement by the deceased witness may be admitted under a firmly rooted exception to the hearsay rule. The Rules of Evidence clearly express a preference for live testimony given in person from the witness stand, but hearsay, if of a specific quality, is better than a complete loss of the evidence of the declarant. The Davis statement is of the quality specified and was properly admitted.

### III

■ We find no merit to the appellants' contention that the evidence was insufficient to prove their guilt beyond a reasonable doubt. The primary evidence against the appellants was the Davis statement, but it was corroborated and enforced by the various telephone records showing six telephone calls from the Davis residence to the appellants' residence during the twenty-four hours following the initial call from Wilson to Davis asking for help in selling the liquor, and the telephone calls from the appellants' residence to Norman in South Carolina, and the finding of a large quantity of the whiskey on Norman's farm. There was also the testimony of Wilson that he saw his truck parked across the road from appellants' house. The evidence of Perlie Workman's threats and intimidation of Davis and his delivery of $3,000 to Davis' father could also be considered by the jury in deciding that Perlie Workman was guilty. There was ample evidence to

support the aiding and abetting conviction of Jeffrey Workman.

### IV

■ The evidence was sufficient to convict Perlie Workman of threatening a witness in violation of 18 U.S.C. § 1512(b)(1), which provides:

Whoever knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding shall be fined not more than $250,000 or imprisoned not more than ten years, or both.

Perlie Workman's statement that he was going "to show you what you gonna get", which was made after Davis had informed him that Jeffrey Workman was probably going to be indicted and that Davis would have to testify truthfully, constituted a threat within the meaning of the statute. In *United States v. Capo*, 791 F.2d 1054, 1070 (2d Cir.1986), the Court stated:

The evidence was ample to support the jury's verdict finding Capo guilty of having attempted to intimidate Gauthier in an effort to prevent his testifying in the grand jury proceeding. Capo's statements to Gauthier, made in response to Gauthier's informing Capo in February 1983 that he intended to testify before the grand jury, including Capo's gratuitous disclaimer that he was a member of the 'mob,' and his dropping the name of the brother of a known organized crime figure in connection with his advice that if everyone kept silent there would be no problem. Capo's contention that his statements, including his references to organized crime, were too ambiguous to be construed as threats was an argument more properly addressed to the jury. The jury was free to reject it, as it apparently did.

In *United States v. Grey Bear*, 828 F.2d 1286, 1297 (8th Cir.1987), a statement that the defendant "told us not to say anything, we'd get the same thing" was found to be a sufficient threat and intimidation of a wit-

ness under the witness intimidation statute. The statement of Perlie Workman to Davis that "you know what you're gonna get? I'm gonna show you what you gonna get" was sufficient, when considered with all of the other circumstances surrounding the meeting of Davis and Perlie Workman, to establish an intimidation or threat to influence or prevent testimony in an official proceeding.

AFFIRMED.