56 F.3d 62
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Timothy JACKSON, a/k/a Shabazz King, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenny LEGRAND, Defendant-Appellant.
 Nos. 94-5338, 94-5440.
 United States Court of Appeals, Fourth Circuit.
 Submitted: April 28, 1995.
Decided: June 2, 1995.
 
 James Joseph Angel, Lynchburg, Virginia; Brian H. Turpin, Danville, VA, for Appellants. Robert P. Crouch, Jr., United States Attorney, Thomas J. Bondurant, Jr., Assistant United States Attorney, Roanoke, VA, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before NIEMEYER and HAMILTON, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Timothy Jackson and Kenny LeGrand appeal their convictions, following a jury trial, on charges of conspiracy to use or carry a firearm during a drug trafficking crime (Count One), and carrying or possessing a firearm in relation to a drug trafficking crime (Count Two) in violation of 18 U.S.C. Sec. 371 (1988), and 18 U.S.C.A. Sec. 924(c) (West Supp.1994), respectively. Jackson and LeGrand timely filed this consolidated direct appeal, seeking reversal of the trial courts' denials of their motions for judgment of acquittal on the ground that the evidence was insufficient to support the juries' findings of guilt. They further contend that they were each denied their constitutional right of confrontation because the trial courts allowed the introduction of each other's grand jury testimony.
 
 
 2
 In addition to their joint claims on appeal, Jackson alleges that the admission of evidence of his refusal to submit to a gunshot residue test following his arrest was reversible error. Finally, LeGrand alleges that his constitutional right to a speedy trial was violated. For the reasons set forth below, we affirm the convictions of Jackson and LeGrand.
 
 I.
 
 3
 Jackson and LeGrand first allege that the evidence was insufficient to support their conviction of violation of Sec. 924(c). In evaluating the sufficiency of the evidence to support a conviction, and the district judges' denials of Defendants' motions for acquittal, the relevant question is whether any rational trier of fact could have found Jackson and LeGrand guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). The evidence must be construed in the light most favorable to the Government. Tresvant, 677 F.2d at 1021; United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991). If there exists substantial evidence to support a verdict, viewing the evidence most favorable to the Government, the verdict must be sustained. Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 4
 This Court considers circumstantial and direct evidence, and allows the Government the benefit of all reasonable inferences from the facts established to those sought to be proven. Tresvant, 677 F.2d at 1021. Circumstantial evidence need not exclude every reasonable hypothesis of innocence. United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir.1989).
 
 
 5
 The evidence at trial,[1] construed in the light most favorable to the Government, revealed that the charges against Jackson and LeGrand stemmed from a drug-related drive-by shooting. Beginning in 1989, LeGrand supplied kilogram quantities of cocaine to Clarence Martin, a local drug dealer. Jackson often accompanied LeGrand in his drug dealing transactions, acting as LeGrand's bodyguard.
 
 
 6
 Martin testified that he and his investors lost $300,000 to LeGrand during the course of their drug dealings. Martin did not believe LeGrand when he told Martin that the money was stolen from him in New York; rather he suspected that LeGrand had stolen the money. He publicly called LeGrand a thief and told other drug dealers not to do business with LeGrand. According to Martin, the effect this had was to give LeGrand a bad reputation in the drug trade, and adversely affect the trust others had for him in the drug business.
 
 
 7
 Martin testified that on January 24, 1990, LeGrand, with Jackson present, physically attacked Martin for hurting his drug business. Martin left, but later returned with several others who then beat up LeGrand. As LeGrand and Jackson left, they were heard saying that they were "going to fuck somebody up."
 
 
 8
 Darin Smith testified that he was a bodyguard for Tyrone Dawkins, another drug dealer, and that LeGrand approached Dawkins to obtain firearms and to use Smith as the driver of a car while Jackson shot up Martin's house. According to Smith, LeGrand obtained a 45 automatic and a Tech 9 semi-automatic assault rifle from Dawkins. LeGrand then went to a local hospital, purportedly to establish an alibi, while Smith drove Jackson to Martin's house. Smith further testified that Jackson fired the Tech 9 assault rifle approximately six times at the people inside Martin's house, shooting both Martin and his three-year old son.
 
 
 9
 Officer Michael Jones, of the Danville Police Department, testified that shortly after the drive-by shooting he stopped a vehicle fitting the description of a car suspected of being driven in the shooting. Smith was driving the car; Jackson was a front seat passenger. The police searched the car with LeGrand's consent within an hour after the shooting; LeGrand admitted that clothes found in the trunk were his. A live 9mm cartridge of the same manufacture and caliber of the spent rounds at Martin's house, and of the same type used in Tech 9 assault weapons, was found by Jones in the passenger seat where Jackson had been sitting.
 
 
 10
 Anthony Shannon, one of the drug dealers working for LeGrand and Jackson, testified that a few days after the shooting, Jackson told him that he and another individual shot up Martin's house after an argument. Over Jackson's objection, a police officer was allowed to testify that on the morning of the shooting, Jackson refused to submit to a gunshot residue test. Finally, when confronted by the wounded three-year old boy's grandmother, LeGrand stated that "he did not mean for [the boy] to get shot."
 
 
 11
 To obtain a conviction under Sec. 924(c), the Government must prove that a firearm was "use[d] or carr[ied]" "during or in relation to" a "drug trafficking crime." Smith v. United States, 61 U.S.L.W. 4503, 4505 (U.S.1993). The phrase "in relation to" means the "firearm must have some purpose or effect with respect to the drug trafficking crime ... [and] ... facilitate, or have the potential of facilitating, the drug trafficking offense." Id. at 4508 (citations, internal quotation marks, and brackets omitted). This Court has held that the drug trafficking crime "need not have been the defendant's sole purpose in the use or carrying of the weapon." United States v. Sloley, 19 F.3d 149, 152 n. 2 (4th Cir.), cert. denied, 62 U.S.L.W. 3861 (U.S.1994); see also United States v. Camps, 32 F.3d 102, 106 (4th Cir.1994) (retaliation attacks involving firearms arising from the shortage by one drug gang to another on a cocaine deal held to be "in relation to" the distribution of narcotics for purposes of Sec. 924(c) convictions).
 
 
 12
 Here, Martin testified that the impetus for LeGrand's original attack on Martin was because Martin hurt his drug business by spreading the word around the drug dealing community that LeGrand was not to be trusted after LeGrand shorted Martin and his investors $300,000 from a drug deal. After this initial attack, Martin left, but later returned with several others who then beat up LeGrand. As LeGrand and Jackson left, they were heard saying that they were "going to fuck somebody up." The drive-by shooting occurred thereafter.
 
 
 13
 We find that while the shooting was not accompanied by the specific distribution of narcotics, as Appellants contend, Martin's testimony that the series of attacks which culminated in the shooting, all of which related to the $300,000 LeGrand allegedly stole from Martin in relation to the distribution of drugs, is a sufficient basis for a rational jury to conclude that the shooting was a violation of Sec. 924(c). See United States v. Camps, 32 F.3d at 106.
 
 
 14
 Jackson and LeGrand also assert that the Government's witnesses, including Martin, testified inconsistently with one another, that they were biased, and that they were not credible for a variety of reasons. However, in resolving issues of substantial evidence, this Court does not weigh evidence or review witness credibility. United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989); Murdaugh Volkswagon, Inc. v. First Nat'l Bank, 801 F.2d 719, 725 (4th Cir.1986). Hence, even if the juries had decided guilt on the basis of Martin and Smith's testimony alone, the juries' decisions to believe their testimony is not reviewable. Martin and Smith's testimony, together with that of the other Government witnesses, and taken in the light most favorable to the Government, supports the convictions of Jackson and LeGrand. Accordingly, we find that the district judges properly denied Jackson and LeGrand's motions for acquittal.
 
 II.
 
 15
 The second of two issues Jackson and LeGrand raise together on appeal is that the district judges erred in allowing the introduction of Jackson and LeGrand's grand jury testimony in each other's trials, claiming that the evidentiary ruling violated their constitutional right of confrontation. Different district judges heard each case, and handled the evidentiary question in a different manner.[2]
 
 
 16
 When a declarant is unavailable as a witness, Fed.R.Evid. 804(b)(5) permits the use of a hearsay statement not specifically covered by any exception when the statement has equivalent circumstantial guarantees of trustworthiness, and when the court determines that: (1) the statement is offered as evidence of a material fact; (2) the statement is more probative on point than other evidence which the proponent could procure through reasonable diligence; and (3) the general purpose of the rules and interests of justice will best be served by admission of the statement. Under one exception to the hearsay rule, grand jury testimony which carries circumstantial guarantees of trustworthiness is admissible. United States v. Thomas, 705 F.2d 709, 711-12 (4th Cir.), cert. denied, 464 U.S. 890 (1983); United States v. Walker, 696 F.2d 277, 280-81 (4th Cir.1982), cert. denied, 464 U.S. 891 (1983). A defendant's right to confront accusatory witnesses may be satisfied absent physical, face-to-face confrontation at trial only when the denial of such confrontation is necessary to further important public policy and where reliability of the testimony is otherwise assured, as by preservation of other elements of confrontation such as oath, cross-examination, and observation of demeanor by trier of fact. Maryland v. Craig, 497 U.S. 836, 845-46, 850 (1990).
 
 
 17
 The finding of a trial judge on the guarantees of trustworthiness are subject to the clearly erroneous standard of review. United States v. Workman, 860 F.2d 140, 144 (4th Cir.1988), cert. denied, 489 U.S. 1078 (1989) (citing United States v. Smith, 792 F.2d 441, 443-44 (4th Cir.1986), cert. denied, 479 U.S. 1037 (1987)). In this case, we do not conclude that the district judges clearly erred.
 
 
 18
 Moreover, the harmless beyond a reasonable doubt standard for constitutional error applies to Confrontation Clause violations. Idaho v. Wright, 497 U.S. 805, 823 (1990); Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). Given the ample evidence against both Jackson and LeGrand, even without considering their grand jury testimony, we find that the juries' findings of guilt are well supported.
 
 III.
 
 19
 The third issue raised on appeal is by Jackson alone, who contends that the trial court erred in admitting evidence, over his objection, of his refusal to submit to a gun residue test following his arrest. The Supreme Court has held that the Fifth Amendment privilege against self-incrimination does not extend to the results of blood tests, see Schmerber v. California, 384 U.S. 757, 761, 765 (1966), and that admitting evidence of a defendant's refusal to submit to a blood alcohol test similarly did not violate the Fifth Amendment. See South Dakota v. Neville, 459 U.S. 553, 564 (1983). In Neville, the Supreme Court based its decision on the fact that no impermissible governmental coercion is involved when a suspect refuses to submit to chemical analysis. Id. at 562. Considering the Supreme Court's logic in Neville, we conclude that the district court did not err in admitting the evidence of Jackson's refusal to submit to the gun shot residue test.
 
 IV.
 
 20
 Finally, LeGrand contends that he was tried in violation of his constitutional and statutory rights to a speedy trial. Generally, this Court's review of the district court's ultimate legal determination regarding an alleged speedy trial violation is subject to de novo review. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (U.S.1992). However, the district court's factual findings underlying speedy trial determinations are entitled to considerable deference, see Doggett v. United States, 60 U.S.L.W. 4741, 4742 (U.S.1992), and should not be disturbed unless clearly erroneous. See generally United States v. Vinson, 886 F.2d 740, 742 (4th Cir.1989), cert. denied, 493 U.S. 1062 (1990); United States v. Henderson, 746 F.2d 619, 622 (9th Cir.1984), aff'd, 476 U.S. 321 (1986).
 
 
 21
 First, whether petitioner was denied his Sixth Amendment right to speedy trial is determined under the four element test set forth in Barker v. Wingo, 407 U.S. 514 (1972). We find that the eight month delay at issue here, much of which was caused by LeGrand's own motions, does not rise to the level of a Sixth Amendment speedy trial violation. See Doggett v. United States, 60 U.S.L.W. at 4742 n. 1 (a delay approaching one year is a threshold for unreasonable delay). Nor did LeGrand establish prejudice in the delay, as required by Barker v. Wingo. Accordingly, we find LeGrand's Sixth Amendment claim of denial of his speedy trial right to be without merit.
 
 
 22
 Second, the Speedy Trial Act requires that a criminal defendant be tried within seventy days of his indictment or initial appearance, whichever is later. 18 U.S.C. Sec. 3161(c)(1) (1988). Because LeGrand's initial appearance occurred after his indictment, the clock begins to run from August 9, 1993. Much of the time between the date of LeGrand's appearance and trial is expressly excluded from the periods allowed pursuant to 18 U.S.C. Sec. 3161(h) (1985). Excluding the periods based on LeGrand's pretrial motions alone,[3] only forty-six days passed on the seventy-day statutory speedy trial clock prior to trial. Accordingly, we find that LeGrand's claim of a statutory speedy trial act violation is likewise without merit.
 
 
 23
 Accordingly, we affirm the convictions of both Jackson and LeGrand. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 Both parties agree that the evidence in both cases was substantially the same. The Joint Appendix contains mostly testimony from the Jackson trial. Accordingly, the evidence that is recounted here is primarily from the Jackson trial, although it is applicable to the convictions of both Jackson and LeGrand
 
 
 [2]
 Specifically, the judge in the Jackson trial accepted LeGrand's attorney's representation that LeGrand would claim the Fifth Amendment right against self-incrimination if called to the stand to testify against Jackson. The judge refused to permit the Government to call LeGrand because he may have relied on the Fifth Amendment, declared LeGrand unavailable for trial pursuant to Fed.R.Evid. 804, and allowed a portion of LeGrand's grand jury testimony implicating Jackson to be read to the jury. The district court instructed the jury twice that LeGrand's statement was not subject to cross-examination
 In LeGrand's trial, the judge permitted the Government to call Jackson to the stand and ordered him to testify. When Jackson refused, the Court held him in contempt, allowed the Government to read the portion of his grand jury testimony implicating LeGrand, gave defense counsel an opportunity for cross-examination, and allowed the defense to designate a portion of the grand jury testimony to be read to the jury. In addition, the district court cautioned the jury about Jackson's refusal to answer questions under cross-examination.
 
 
 [3]
 See 18 U.S.C. Sec. 3161(h)(1)(F)