**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee,*

v.

BRIAN ANTWANINE JOHNSON, a/k/a
Fudd,

  *Defendant-Appellant.*

No. 00-4430

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-98-283-A)

Argued: April 6, 2001

Decided: June 28, 2001

Before WIDENER and WILKINS, Circuit Judges, and
Patrick Michael DUFFY, United States District Judge
for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Joseph John McCarthy, DELANEY, MCCARTHY,
COLTON & BOTZIN, P.C., Alexandria, Virginia, for Appellant.
Gordon Dean Kromberg, Assistant United States Attorney, OFFICE
OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for
Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney,

OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Brian Antwanine Johnson appeals his convictions for money laundering and conspiracy to commit money laundering, *see* 18 U.S.C.A. § 1956(a)(1)(B)(i), 1956(h) (West 2000), and his conviction and sentence for conspiracy to distribute 50 grams or more of cocaine base, *see* 21 U.S.C.A. § 846 (West 1999). We affirm.

### I.

Since Johnson's appeal presents only legal questions, the facts may be summarized briefly. The evidence presented at trial established that between 1992 and 1997 Johnson engaged in the sale of cocaine base in Baltimore, Maryland. Johnson laundered the proceeds of this activity through successive purchases of vehicles of increasing value; the vehicles were titled in the names of various friends and family members who acted as straw purchasers. Based upon this evidence, the jury convicted Johnson of one count each of conspiracy to launder money and conspiracy to distribute cocaine base and of five substantive counts of money laundering.

### II.

We first consider Johnson's assertion that the district court violated his rights under the Confrontation Clause by admitting the grand jury testimony of Robert Riddick, Jr., who testified regarding Johnson's drug-dealing activities. The district court admitted the grand jury testimony pursuant to the "residual" hearsay exception. *See* Fed. R. Evid.

807. Johnson maintains that the admission of the testimony was improper because the Government failed to exert good faith efforts to secure Riddick's presence at trial and because Riddick's grand jury testimony did not bear sufficient indicia of reliability. We reject both contentions.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This protection is not absolute, however; "the Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial." *Maryland v. Craig*, 497 U.S. 836, 847-48 (1990). For example, hearsay is admissible "if the prosecution establishes that the declarant is unavailable and that the evidence bears indicia of reliability sufficient to afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement." *United States v. Shaw*, 69 F.3d 1249, 1253 (4th Cir. 1995) (internal quotation marks omitted).

Johnson first challenges the conclusion of the district court that Riddick was unavailable. Following Riddick's testimony before the grand jury in 1998, the Government maintained contact with Riddick through an agent of the Drug Enforcement Administration. Johnson was a fugitive for approximately one year following his indictment, and during that time Riddick's controlling agent was reassigned and the Government lost contact with Riddick. After efforts to locate Riddick at various former addresses failed, the Government notified local law enforcement authorities to be on the lookout for Riddick. One week before trial, the Government issued a material witness warrant so that Riddick could be taken into custody if he were located. Based on this sequence of events, the district court determined that Riddick was unavailable.

Johnson does not contest the factual accuracy of the Government's account, but rather maintains that the Government's efforts to locate Riddick were inadequate as a matter of law. *See United States v. Thomas*, 705 F.2d 709, 711-12 (4th Cir. 1983) (explaining that a witness is not unavailable if the Government has failed to employ reasonable means to obtain the witness' presence (citing Fed. R. Evid. 804(a)(5))). Under similar circumstances, however, we have con-

cluded that the Government made a good faith effort to obtain the presence of a witness. *See id.* at 712 (holding that witnesses were unavailable when Government maintained contact with one witness directly and with the other through his attorney, but both witnesses absconded following their grand jury testimony and could not be located by service of process). We therefore conclude that the district court correctly determined that Riddick was unavailable.

Johnson next contends that the district court erred in concluding that Riddick's grand jury testimony bore sufficient indicia of reliability. In *United States v. McHan*, 101 F.3d 1027 (4th Cir. 1996), we identified several factors relevant to a determination of whether grand jury testimony bears sufficient indicia of reliability to be admitted under Rule 807. *See id.* at 1038.[1] In particular, we noted that such testimony is, to some degree, inherently reliable because it "is given in the solemn setting of the grand jury, under oath and the danger of perjury, and in the presence of jurors who are free to question witnesses and assess their credibility and a court reporter who prepares an official transcript of the testimony." *Id.* We cautioned, however, that grand jury testimony is not per se reliable. Rather, other factors should be considered, including whether the witness appeared voluntarily, whether the witness testified from personal knowledge, and whether the testimony was accurate. *See id.*

Applying the factors identified in *McHan*, we conclude that the district court did not commit clear error in determining that Riddick's grand jury testimony bore sufficient indicia of reliability to be admitted under Rule 807. In addition to the indicia of reliability applicable to all grand jury testimony, Riddick appeared voluntarily and testified from personal knowledge. And, as the district court noted, the majority of Riddick's testimony was elicited through non-leading questions.[2]

---

[1]*McHan* discusses Federal Rule of Evidence 804(b)(5). Subsequent to the decision in *McHan*, Rule 804(b)(5) was recodified as Rule 807 with no change in meaning. *See United States v. Bros. Constr. Co. of Ohio*, 219 F.3d 300, 309 n.2 (4th Cir. 2000), *cert. denied*, 121 S. Ct. 628 (2000).

[2]Moreover, any possibility of prejudice was obviated by repeated cautionary instructions of the district court regarding Riddick's testimony. *See United States v. Powers*, 59 F.3d 1460, 1468 (4th Cir. 1995).

*Cf. United States v. Flores*, 985 F.2d 770, 776 n.14 (5th Cir. 1993) (observing that grand jury testimony elicited through leading questions is less reliable).

## III.

During the trial, Ivan Burrell, a Government informant, testified regarding an aborted drug transaction involving Johnson. On cross-examination, Burrell denied that he was under the influence of drugs at the time of his interaction with Johnson but acknowledged that he had used drugs "around the time" of the events in question. J.A. 457. Based upon this admission, Johnson maintains that he was entitled to a jury instruction that "[t]he testimony of a witness who was using drugs at the time of the events he is testifying about . . . may be less believable because of the effect the drugs may have [had] on his ability to perceive . . . the events in question." *Id.* at 52. We review the refusal of a requested jury instruction for abuse of discretion. *See United States v. Abbas*, 74 F.3d 506, 513 (4th Cir. 1996).

An "addict instruction" such as the one requested by Johnson is not required when, *inter alia*, the district court provides other cautionary instructions. *See United States v. Vgeri*, 51 F.3d 876, 881 (9th Cir. 1995). Here, the district court provided lengthy instructions regarding the assessment of a witness' credibility. In particular, the district court instructed the jury that an "informant's testimony must be examined with greater scrutiny than the testimony of an ordinary witness." J.A. 811. The court further warned the jury to be cautious of the testimony of an informant who had received benefits from the Government—as Burrell had, in the form of living expenses and rewards for helpful information—because "the witness may believe that he will only continue to receive these benefits if he produces evidence of criminal conduct." *Id.* at 812. In light of Burrell's explicit denial that he was intoxicated at the time of the events in question and the other cautionary instructions given by the district court, the refusal to give the requested instruction was not an abuse of discretion. *See Vgeri*, 51 F.3d at 881.

## IV.

Johnson raises several challenges to his drug trafficking conviction. We address these challenges seriatim, concluding that all of them are without merit.

A.

Johnson first contends that Congress exceeded its authority under the Commerce Clause in enacting the drug trafficking statute, 21 U.S.C.A. § 841 (West 1999 & Supp. 2001).[3] Specifically, Johnson maintains that drug trafficking is not an activity affecting interstate commerce that Congress may regulate pursuant to the Commerce Clause. We rejected this claim in *United States v. Leshuk*, 65 F.3d 1105, 1111-12 (4th Cir. 1995), concluding that under *United States v. Lopez*, 514 U.S. 549 (1995), intrastate drug trafficking activity had a substantial effect on interstate commerce. The decision cited by Johnson, *United States v. Morrison*, 529 U.S. 598 (2000), does not undermine our prior holding because it "did not modify the *Lopez* framework in any manner relevant to this case." *United States v. Gallimore*, 247 F.3d 134, 138 (4th Cir. 2001).

B.

Johnson next argues that venue in the Eastern District of Virginia was improper on the drug trafficking charge. Because Johnson failed to raise this issue before the trial court, our review is for plain error. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993). In order to establish our authority to notice an error not preserved by timely objection, Johnson must demonstrate that an error occurred, that the error was plain, and that the error affected his substantial rights. *See id.* at 732. Even if Johnson can satisfy these requirements, correction of the error remains within our discretion, which we "should not exercise . . . unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (second alteration in original) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)). Because we conclude that venue was proper in the Eastern District of Virginia, there was no error.

---

[3]Johnson was not charged with a substantive drug offense, but with conspiracy. However, 21 U.S.C.A. § 846 specifies that "[a]ny person who . . . conspires to commit any offense" under, *inter alia*, 21 U.S.C.A. § 841 "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the . . . conspiracy."

Article III of the Constitution provides, as is relevant here, that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment reinforces this command, stating that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI; *see* Fed. R. Crim. P. 18 ("Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed."). When multiple counts are alleged in an indictment, venue must be proper on each count. *See United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000), *cert. denied*, 121 S. Ct. 1408 (2001). In a conspiracy case, venue is proper in any district in which an act in furtherance of the conspiracy was committed. *See United States v. Al-Talib*, 55 F.3d 923, 928 (4th Cir. 1995). The burden is on the Government to prove venue by a preponderance of the evidence. *See id.*

Johnson maintains that the Government failed to provide any evidence that any drug trafficking activity took place in the Eastern District of Virginia. Johnson overlooks the fact that the evidence indicated that on one occasion Johnson and a cohort traveled to the Eastern District of Virginia to retrieve narcotics from a vehicle of Johnson's that had been impounded. Because the retrieval of the narcotics was an act in furtherance of the conspiracy, venue was proper in the Eastern District of Virginia.

## C.

Finally, Johnson contends, based upon *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that the life sentence imposed for the drug conspiracy conviction was improper because the jury was not required to find drug quantity beyond a reasonable doubt in order to convict. Johnson failed to raise this issue before the district court; accordingly, we review for plain error. *See Olano*, 507 U.S. at 731-32.

We conclude that there was no *Apprendi* error here. Johnson's indictment specifically charged him with conspiring to "distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base." J.A. 24. And, the district court explicitly

instructed the jury that in order to convict Johnson, it had to find beyond a reasonable doubt that he was a member of the conspiracy alleged in the indictment:

> [C]ount two is the drug conspiracy count, and that count alleges that . . . the defendant unlawfully, knowingly, and intentionally . . . conspired . . . to unlawfully, knowingly, and intentionally distribute 50 grams or more of "crack" cocaine. . . .

> . . . .

> The first element for the drug conspiracy is . . . that the Government must prove beyond a reasonable doubt . . . that the agreement as described in the indictment, did in fact exist . . . . So that, in other words, they have alleged a conspiracy between the defendant and at least one other person to distribute 50 grams or more of "crack" cocaine . . . .

> . . . .

> So to establish the drug conspiracy, they must prove beyond a reasonable doubt three facts: That the specific conspiracy they have described in count two of the indictment did, in fact, exist and that the defendant knowingly became a member of that conspiracy. That is the second element. The third element is that he voluntarily became a member of that conspiracy.

*Id.* at 823-24. The finding by the jury that Johnson agreed to distribute more than 50 grams of cocaine base is sufficient to authorize the imposition of a life sentence under *Apprendi. See United States v. Hoover*, 246 F.3d 1054, 1058 (7th Cir. 2001); *United States v. Irvin*, 2 F.3d 72, 75 (4th Cir. 1993) (explaining that a conspirator is criminally liable for all acts within the scope of the conspiratorial agreement); *see also United States v. Richardson*, 233 F.3d 223, 230-31 (4th Cir. 2000) (holding that no *Apprendi* error occurred when indictment charged drug quantity and district court instructed jury that Government was required to prove offense as charged in indictment), *petition for cert. filed*, No. 00-9234 (U.S. Mar. 19, 2001).

## V.

For the reasons set forth above, we conclude that there was no error in Johnson's convictions or sentence.[4] Accordingly, we affirm.

*AFFIRMED*

---

[4]In addition to the issues discussed above, Johnson challenges the admission of certain testimony by two witnesses. We have carefully considered Johnson's arguments with respect to this testimony, and we conclude that his challenges are without merit.